Peter Clydman, Appellant in Pro Se, Michael G. Spector, Counsel for Appalee, Jordan Jean Pearlman. Okay, we've got Mr. Clydman on Zoom, it looks like. Can you hear us? Yes, I can, Your Honors. Okay. Go ahead and make your appearance. This is Peter Clydman, Creditor and Appellant, Pro Se. Okay, you want to reserve a little time for rebuttal? Yes, let's go with six minutes, please. Okay, and remember, again, are you able to see the clock so you can see what we see in terms of... Yes, Your Honors. Okay, why don't we start at 15 again, because those are all process questions for me, so let's give them the full 15, okay? All right, you may proceed. Yes, first of all, thank you, Your Honors, very much for allowing me to file electronically and also for allowing me to appear. No, Mr. Clydman, it's the times. We all learned how to do this during COVID, so we're good at it now, I think, okay? Yes, well, I think that the most appropriate thing for me to do is to ask you whether you have any questions for me. You know, you've read the brief, so there's no point in me just saying what I already wrote, so if you have questions, please fire away. Well, let me begin with sort of a housekeeping one. The constitutional argument was not raised in the Bankruptcy Court, correct? That's correct. Okay, and you're claiming that the statute is vague? Yes. Is there a particular language in the statute that you think is vague? The answer is that in terms of an action against a fraudulent transferee, there's nothing in the statute which makes it clear that a creditor can't go after a fraudulent transferee. That's my only point. Okay. All right, we can – if you want to let that one go, we can take it from there, okay, on that one? Okay. Okay, and the second point is help us out with why your action in New York, even if you now explain it as being something solely in your mind against Ms. Hunter, wasn't a violation of the state to the extent that it was an attempt to collect a debt against Mr. Perlman? Well, the phrase against Mr. Perlman, it's a little tricky because it's not really clear what it's modifying. The debt is against – the action is not against Mr. Perlman, but the debt is against Mr. Perlman. But in any event, the reason is the Ninth Circuit's interpretation. I quote a bunch of Ninth Circuit cases where they say you can't – it's not a violation of the state if you go after someone who's liable for the debts of the debtor. Now, I understand that they are typically referring to, let's say, a guarantor or a surety where there's a direct relationship between the creditor and that third-party guarantor, for example. But the language in the Ninth Circuit, which seems to be broader than that, it says if there's someone liable to the debts of the debtor, liable on the debts of the debtor, then the creditor can go further. Who was the original New York judgment against? Against Mr. Perlman. Was it against Ms. Hunter? No. Okay. Was Ms. Hunter's liability based on anything other than she was the recipient of a fraudulent transfer in your mind? Yes. What was that? No, no, no. I'm sorry. The only claims against Ms. Hunter in the purported state violation case is the alleged transferee in a fraudulent transfer scheme. So she doesn't have an independent debt to you? Correct. Okay. So why – let me go back to the original question. Why that – isn't that a problem under 362D if at the end of the day what you're doing in New York is collecting a debt that's owed by Mr. Perlman? Well, I guess the thing is, is that if you have a guarantor – She wasn't one, right? I mean she wasn't a guarantor. Right, but I'm saying in the situation where you're going after a guarantor, you're trying to collect a debt against the debtor from the guarantor. No, but the – no, no, no. The guarantor made themselves liable on the debt. Okay? That's very different. Okay. So if you've got another example, I'm all ears, but that one I don't think I'm with you on. Okay? Okay. All right. I'll let that one slide. I will lose in this court on that issue, and I'm okay with that. If I – Well, then why are you here? No, because of the – no, because they're not entitled to any attorneys. They're not entitled to attorney's fees. Okay. Yeah, that's the next argument, right? Go ahead. Well, yeah, that's the most powerful argument. In other words, Mr. Perlman was not damaged by anything I did. If I violated the automatic stay, he was not damaged, and so he has no claim under 362K. Well, okay, that's based on a bunch of out-of-circuit law, right? Well, the only – yes, there's a lot of out-of-circuit law. Well, I mean you've read Schwartz-Tollard, right? Yes. That's the more direct instruction to us, wouldn't you say? That's the Ninth Circuit who reads our papers, grades our papers. They tell us what to do. Don't you think that came to a different conclusion? Absolutely not, Your Honors, because that case never considered – never squarely considered the situation which we have now. In that case – and I argue this extensively in my reply brief – is that because they raised the argument in the appellee's brief. That is, in that case, there were damages other than the attorney's fees. They never squarely addressed the situation which is before the court now. Well, let me give you a hypo, okay? If Schwartz-Tollard, among other things, said the mere fact that the violation has ceased doesn't mean that we couldn't find their attorney's fees payable also under 362K, doesn't that suggest to you that the attorney's fees are not necessarily tied to what you might call damages? And by the way, I've got other problems with the argument, but that's one. Give me your answer to that one. Yeah, I didn't actually follow what you said, Your Honor. Here, I'll try again. If what Schwartz-Tollard said is the mere fact that the contemnor or whomever you want to call them has stopped doing the horrible things, doesn't cut off the right to attorney's fees because one is still enforcing the stay, including through appeal, doesn't that suggest to you that attorney's fees are not necessarily tied to damages? No, that's not correct, Your Honor. Okay. In that case, there were damages other than attorney's fees. There were damages other than attorney's fees, and that case decided that if there are damages other than attorney's fees, then you're absolutely allowed to go after the creditor and collect, in addition to your damages that you got other than attorney's fees, you're allowed to collect all the other attorney's fees that you incur as a result of trying to make yourself whole on the damages that you originally suffered. So that case never squarely addressed the situation which is before this court. It never addressed the situation where a completely undamaged individual hires an attorney to go after the creditor and say, oh, well, I wasn't damaged before the attorney started working on the case, but my damages are – occurred after the attorney started working on the case. Okay. Let me pause you because I ain't buying any of this, okay? I'll just be blunt with you. The great thing about the automatic stay is it's automatic, right? The whole point is that it puts the burden on people who think the stay doesn't apply or shouldn't apply, or let's clarify whether it doesn't, to what extent it does, to come in and talk to the court and not to decide on their own that I don't think the automatic stay applies. The whole point of this is to give the debtor a respite. And the idea that if they enforce that, if they don't have any other damages, they can't claim under 362K would severely undermine 362K, wouldn't it? I mean, how would – what should the debtor have done here? Just wait until they think you harmed them and then –  And in the meantime, you're violating the stay? Well, Your Honor, Your Honor, 362K – Well, let me make sure we're on the same page. You are violating the stay under 362A1, correct? I think you've conceded that, correct? Well, I've conceded it in – Okay. So if you're violating the stay under 362A1, why do we have to wait for the debtor to decide, oh, now I've been damaged and now I'm going to stop that from happening anymore? Why does that make any sense at all? It's a question of statutory interpretation. Three – and there's even a case that – the Easley case that they cite where it says the purpose of 362K is to make the debtor whole. If I violate the stay by going after Ms. Hunter, his wife, the alleged transferee – so assume arguendo that I'm violating the stay by going after Ms. Hunter, the alleged fraudulent transferee. Now, she would have huge claims against me under 362K, but not Mr. Perlman. No, she wouldn't because she's not the debtor. But it – Okay. So I mean you can see where this is – I mean you're well – you're within your six minutes. Do you want to stop now or do you want to keep going? No, I'd like to just go a little bit. Okay. 362K doesn't refer to the debtor. It refers to an individual. Ms. Hunter, if she feels she was damaged, she can go after me. Mr. Perlman was not damaged one iota, not one penny, not one penny before Mr. Spector started working on the motion. How about the fact that the statute says 362K gives damages including attorney's fees? So it makes the damage the attorney's fees by statutory construction. It includes attorney's fees as a portion of the damage. Well, what you're missing there is the beginning of it. It has to be an injured – someone injured by the stay. He was not injured by the stay. In any event, I'll let Mr. Spector speak and then I'll – yeah. Yeah, because you've got one more point to make, I think, right? Yeah. Okay. Okay. I'll let Mr. Spector speak. All right. He'll come up right now. Very briefly, Your Honors, good morning. Michael Spector for the appellee, Jordan Perlman. This was an ongoing violation. He was warned about not violating the stay. He continued to proceed in the New York action. I had a conversation with him saying, you're violating the stay. Stop. And he said, I am not violating the stay. I'm going to continue. And, in fact, he did continue, which forced me into the position of having to file the motion. So, as Schwartz-Tallard said, everybody recognizes that attorney's fees for ongoing violations are compensable. That's the end of the story. This was ongoing. He didn't say, I'm going to stop. He said, I'm going to continue. We didn't get to that part yet, yeah. And that's – unless the court has any other questions for me, that's all I have. Well, let's talk about A3. Is that a problem to the extent that what he was doing here was trying to capitalize on or exploit a fraudulent transfer claim? Well, I think it has so many layers to it because not only was he trying to collect the judgment, he was trying to create a community property estate by avoiding the transfer and then going after that community property assets, which would otherwise belong to the bankruptcy estate. So that's an A3. But is that the debtors to complain about? That's probably the trustees. Now, I think there might be a distinction between are you entitled to stop him from doing that and are you entitled to recover. Those might be two different questions. Right. So if you have any thoughts about that, we're all ears. No, I think that it's enforced against property. The estate probably belongs to the trustee. But nonetheless, we had to do something to stop all three of those things from occurring. Continuing on with collection against the debtor, trying to pursue property of the bankruptcy estate, and actually going after assets if he was successful that would belong to the bankruptcy estate is a whole slew of state violations. Is there any distinction in the statute between the actions that may be pursued as 362 actions to prevent a violation of the state that are assigned only to the trustee or only to the debtor? I don't see. I'm not aware of that. Yeah, it's a little tricky, I think. And you understand the distinction the judge was making? I understand. It might be a distinction between what can be recovered and what is a violation of the stay. Right. I understand. And damages that might flow from that might be different. We didn't seek any monetary damages for physical, actual harm or any harm to the property in question. Right. It was merely to stop the violations of the state. Okay. I think Mr. Kleiman may get to this point during his rebuttal time. Do you want to comment at all on the issue about the rate for attorneys fees? Yeah, certainly. I mean, I've submitted, as stated in my declaration, numerous employment applications throughout the Central District of California. My rate has always been approved. The judge is entitled to rely on her knowledge and experience of not only the community rates, but what her knowledge and experience of me is. And she knows me very well. She knew me very well prior to that hearing. And she knows that the community rate, my rate is just a fraction of what the rest of the community is charging these days. And she found that to be a very reasonable rate. And it is. It's a mere fraction. She's entitled to rely on it. And there was nothing in the total amount. There was nothing excessive, monstrous, grossly exorbitant or anything like that. And Mr. Kleiman's only argument, by the way, was that my rate was too high. Yeah. And not that the total amount that was compensated was inappropriate. I think that's right. Okay. Remind me, was there an evidentiary objection at the trial to your declaration? As to the rate, I believe there was.  You want to talk about that? I believe the objection was relevance. Okay. It wasn't hearsay, for example. I don't believe it was hearsay. I think it was relevance. My knowledge and my rate as approved by the bankruptcy court.  I mean, believe it or not, that's how it's relevant. Every single bankruptcy court in Central District of California says my rate is reasonable. Yeah. I mean, who's to say otherwise? No, I just want to make sure that Kleiman gets to make that argument. Okay. And I think he does.  Okay. All right. Nothing. Okay. Thank you very much. Thank you. Appreciate it. Okay. Back to Mr. Kleiman. Yes, Your Honors. This notion of an ongoing stay is completely baseless. I did two discrete acts. Can we pause for one sec? I think we need to get back on his time, okay? Okay. I'm sorry. I think he had five minutes. It was under five.  I think it was about, it was a little under four minutes if I remember that correctly.  So we'll give him four. We'll give him a couple extra seconds here, okay? Okay. All right. All right. Go ahead, Mr. Kleiman. This notion of an ongoing stay is completely baseless. I did two discrete acts. I got an order, and I attempted service. And the only other thing I did, the only other thing I did was I told Mr. Spector that I intended to prosecute against Ms. Hunter. The mere act of telling him that is not a violation of the stay. So there was no ongoing violation of the stay. If I say to someone, I'm going to do something, I'm going to do X, and X is a violation, would be a violation of the stay, the mere act of saying I'm going to do it is not a violation of the stay. And it doesn't cause any damage, any monetary damage. When I do it, and I cause damage, then someone can prosecute me under 362K. Your Honors, there was not one penny of damage to Mr. Perlman. And in fact, there couldn't have been. Because I'm going after the fraudulently transferred assets. I'm going after Ms. Hunter. In connection with my action, which we, for purposes of arguendo, violated the stay. Mr. Perlman doesn't suffer one penny of damage. Even if I were to prosecute against Ms. Hunter all the way to the end and get a judgment for $20 million against her, he would not suffer a penny. He has no claim whatsoever to any of that. And his financial position doesn't change. He is not damaged one penny. And with the other, I'm sorry, I can't see the names on the screen. But on your left, I'm not sure which judge mentioned that. Yeah. This issue of including attorney's fees, you have to look at the whole statute. It says if you're injured, you have to be injured first before you're allowed to get that. What the interpretation is that you're suggesting, anyone in the world right now, anyone in the world could say, oh, I'm going to sue Mr. Kleinman in an adversary proceeding having nothing to do with this case. And could say, oh, Mr. Kleinman violated the automatic stay. Here are my attorney's fees, so I want Mr. Kleinman to pay me $5,000. I give this argument, which he doesn't even rebut, that an interpretation which allows an undamaged individual to prosecute a 362K proceeding. And, you know, well, you read my papers, and I'm not sure what the rebuttal is, how you refute that argument, because anyone in the world could do it. So your position is, if I've got it right, a debtor has to suffer some financial loss that's measurable first before they can then seek relief and include attorney's fees. If they only say that I'm damaged because you refused to stop doing something that violates the stay, but I haven't suffered any damage yet, then they can't then get attorney's fees for forcing you to stop by bringing an action in the bankruptcy court. You don't have to take any affirmative action to get relief. You don't have to seek any order from the bankruptcy court to authorize you. You put the burden on them to get and suffer some injury first that is measurable by some standard you've imposed. Otherwise, they can't recover. That's your position. Absolutely right. Okay. That's all we wanted to know. That's all we wanted to know. Thank you. But that's what the statute says. The statute says – That's your interpretation of the statute. We're going to give you our interpretation. Okay. Anything else? Well, the thing is, is that an interpretation that you're suggesting would go against Schwartz-Tallard because then anyone in the whole world – And that's your reading of Schwartz-Tallard? Yes. Anyone in the whole world could then sue me and say he violated the stay. I want my attorney's fees. If they prove that you violated the stay. Okay. The matter is submitted. Thank you very much. Okay, we'll get you a written decision as soon as we can. Thanks. Thank you. Thank you.
judges: Lafferty, Spraker, and Gan